IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RONNIE CLAY ALLEN, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-CV-610-PJC |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Ronnie Clay Allen, Sr. ("Allen"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that he has a

Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

## Background

Allen was forty-two years old on the alleged date of onset of disability and forty-four on the date of the Commissioner's final decision. [R. 1, R. 150 (Ex. 1D)]. He has a GED. [R.40]. He has previous experience as an auto glass installer. [R. 154 (Ex. B2E)]. In his application, he

---

medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

claimed to be unable to work as a result of bipolar I and II disorder with psychotic tendencies, major depression, high cholesterol, hand shaking, tiredness, memory and concentration, inability to get along with others, blood sugar and elevated liver enzymes.

## The ALJ's Decision

In his decision, the ALJ found that Allen last met insured status requirements on March 31, 2014, and, at Step One, that he had not engaged in any substantial gainful activity during the period from his amended alleged onset date of February 8, 2013, through his date last insured of March 31, 2014. [R. 14]. He found at Step Two that Allen had severe impairments of bipolar disorder and substance addiction disorder. *Id.* At Step Three, he found that the impairments did not meet or medically equal any listing. [R. 14-15]. He concluded that Allen had the following residual functional capacity ("RFC"):

> The claimant is limited to simple and some complex tasks (defined as semi-skilled work with a specific vocational preparation (SVP) of 3-4). The claimant is unable to have contact with the public. The claimant' contact with co-workers and supervisors should be superficial (defined as brief and cursory contact).

.

[R. 16]. At Step Four, the ALJ determined that through the date last insured, Allen was unable to perform any past relevant work. [R. 24]. At Step Five, he found that, considering Allen's age, education, work experience and residual functional capacity, there were jobs existing in significant numbers in the national economy that he could have performed, including hand packager, DOT #920.587-018, unskilled (SVP-2), medium exertion, 666,000 in the national economy; auto detailer, DOT #915.687-034, unskilled (SVP-2), medium exertion, 290,000 in the national economy; and box maker, DOT #794.684-014, unskilled (SVP-2), medium exertion, 239,000 in the national economy. [R. 25].

Accordingly, the ALJ found that Allen had not been under a disability at any time from February 8, 2013, the amended alleged onset date, through March 31, 2014, the date last insured. *Id.*

### Plaintiff's Allegations

On appeal, Allen asserts that the ALJ should have given greater weight to the expert medical opinion of his treating licensed behavioral health professional ("LBHP"), should have re-contacted the LBHP to ascertain if her opinion was relevant to the period before the date last insured and should have arranged to have a medical expert review all records in evidence before and after the date last insured.

### Analysis

At the January 23, 2015, administrative hearing, Allen's attorney proffered and the ALJ admitted a form Medical Source Statement – Mental from CREOKS Behavioral Health in Pryor, Oklahoma. [R. 636-638 (Ex. B18F)]. The form is dated January 21, 2015, and signed by family therapist Mari L. Nichols, LBHP. *Id.*[2] Ms. Nichols checked boxes indicating that Allen had "marked" limitations in is ability to understand, remember and carry out simple instructions and to interact appropriately with the public. [R. 637-638]. She indicated he had "extreme" limitations in his ability to make judgments on simple work-related decisions; interact appropriately with supervisors and co-workers; respond appropriately to usual work situations and to changes in a routine work setting; complete a normal workday and work-week without interruptions from psychologically-based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* Under "COMMENTS," Ms. Nichols stated:

---

[2] During the January 23, 2015, hearing, Allen testified that he had begun treatment with Ms. Nichols a couple of months before. [R. 60]. Pointing out that this was a Title II case and Allen's date last insured was almost a year before, the ALJ questioned how a current CE would "show us what he was like back then before the DLI." [R. 61].

4

> Ct struggles with therapu[e]tic interaction in family sessions. Very marked ability to take responsibility for actions, will refuse some activities that are interactive.

[R. 638]. No CREOK treatment notes were submitted.

The ALJ gave Ms. Nichols' Medical Source Statement "virtually no weight" because she was not an acceptable medical source and did not see Allen until well after his date last insured of March 31, 2014. [R. 23].

Allen acknowledges Ms. Nichols was not an "acceptable medical source" but rather an "other source." *See* 20 C.F.R. § 404.1513(a), (d). However, he argues the ALJ failed to analyze her opinion or adequately discuss the 20 C.F.R. § 404.1527(c) factors.[3] This argument lacks merit. The ALJ explained that he discounted Ms. Nichols' opinion because it was not from a relevant time period. [R. 23]. Additionally, he discussed the contrary opinions of acceptable medical sources whose opinions he gave "great weight." [R. 23-24]. This satisfied the requirements of SSR 06-03P, 2006 WL 2329939.[4] *See also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 ("In the case of a nonacceptable medical source . . ., the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.' SSR 06-03p, 2006 WL 2329939, at *6."); *Mounts v. Astrue*, 479 Fed. Appx. 860, 866 ("What matters is that the decision is sufficiently specific to make clear to any subsequent reviewer[] the weight the adjudicator gave to the . . . opinion and the reasons for that weight.") (citation omitted).

---

[3] Those factors include the examining relationship; the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; whether the source is a specialist; and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

[4] This ruling addresses how the agency considers opinions from sources that are not "acceptable medical sources." Factors relevant to considering opinion evidence from "Other Sources" are: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *3.

Citing Social Security Ruling 96-5p[5] and *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002), Allen argues that to the extent there was any ambiguity in Ms. Nichols' report, the ALJ had an obligation to re-contact her for clarification of the reasons for her opinion. [Dkt. #19 at 10]. In *McGoffin*, the Tenth Circuit ruled that the ALJ erred in rejecting a treating physician's opinion based on an unfounded doubt that the physician actually agreed with the assessment he signed. *Id.* The appellate court reasoned that if the ALJ believed the matter was open to question, he had an obligation under 20 C.F.R. § 404.1512(e)(1) (2001)—which *required* the agency to recontact the treating physician—to obtain additional information from the treating physician before rejecting the report outright.

However, it is undisputed that Ms. Nichols did not treat Allen before the date last insured. Accordingly, her medical source statement did not create a duty to develop the record. *See Flaherty v. Astrue*, 515 F.3d 1067, 1072 (10th Cir. 2007) (no duty to develop the record where plaintiff pointed to no opinion relating her April 2003 condition to the relevant period of March 5, 2002 to December 31, 2002). *See also Villalobos v. Colvin*, 544 Fed. Appx. 793, 796 (10th Cir. 2013) (unpublished) (doctor's post-decision letter stating that claimant "*now* has Depression with anxiety" did not create need to further develop the record).

---

[5] SSR 96-5p addressed, *inter alia*, § 404.1512. Under the heading "Requirements for Recontacting Treating Sources, the ruling stated, in pertinent part:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96-5P (S.S.A.), 1996 WL 374183.

Moreover, in 2012, the regulation was amended, so that the agency is only required to "try to resolve the inconsistency or insufficiency" in the evidence through any of several options, one of which is recontacting the treating physician.  *See* 20 C.F.R. § 404.1520b(c).

Finally, the Court rejects Allen's argument that the ALJ should have appointed a qualified Medical Expert to review the record and assist the ALJ in assessing the onset date and date last insured.  The ALJ's decision is supported by substantial evidence, and the court "may neither reweigh the evidence nor substitute [its] discretion for that of the Commissioner." *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Conclusion

The Court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial evidence in the record to support the ALJ's decision.  Accordingly, the decision of the Commissioner finding Allen is not disabled is hereby **AFFIRMED**.

ENTERED this 10th day of February, 2017.

_____
Paul J. Cleary
United States Magistrate Judge